# Kirkpatrick's Estate.

*Wills—Life estate—Dispensing with security—Waiver—Remainderman—Direct inheritance tax—Act of May 17, 1871, P. L. 269.*

1. Where a testator directs that no security be given, the legal relations between the life tenant and remaindermen are the same as if a bond had been given under the Act of May 17, 1871, P. L. 269.

2. The direction that security should not be required, took the place of the bond by waiving it.

3. Where a testator who died in 1890, left his personal estate to his wife for life "to manage and invest the same" as she deems proper, and relieves her from entering security, as provided by the Act of May 17, 1871, P. L. 269, and the widow takes over the estate without entering security, she does not take as trustee, but becomes simply a debtor to the remaindermen for the appraised value.

4. Upon the death of the wife, the remaindermen are entitled to receive from their father's estate only the appraised value of what their mother received as life tenant from it.

5. In such case it is immaterial that the decree awarding the estate to the widow stated that it was awarded to her "in trust for the purposes specified in the will of the deceased."

6. If increments have accrued to the fund during the life tenancy, such increments pass as a part of the widow's own estate, and, if it appears that she died in 1924, are subject to the direct inheritance tax.

Argued October 8, 1925. Appeal, No. 116, March T., 1925, by Donald Thompson, Admr. d. b. n. c. t. a., from decree of O. C. Allegheny Co., Dec. T., 1924, No. 261, dismissing exceptions to adjudication, in estate of Allen Kirkpatrick, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of MILLER, P. J. Before MILLER, P. J., TRIMBLE and MITCHELL, JJ.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. TRIMBLE, J., dissented.

Donald Thompson, administrator d. b. n. c. t. a. of Allen Kirkpatrick, deceased, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Donald Thompson,* for appellant.—When the widow refuses to give the security required by the Act of 1871 she does not become simply the debtor of the remainder-men, responsible only for the exact amount coming into her hands, no more and no less, because it is the giving of the bond which effects that result.

When the life tenant comes into physical possession of the property he becomes "an implied or quasi trustee for the remaindermen."

Mrs. Kirkpatrick became a trustee by virtue of the decree of the orphans' court in 1891, the decree itself operating as her appointment, and her receipt on the record operating as an acceptance: Easterly v. Barber, 65 N. Y. 252; Cent. Nat. Bank of Boston v. Ins. Co., 104 U. S. 54; Welsh's Est., 239 Pa. 616.

*Charles A. Waldschmidt,* with him *Philip S. Moyer,* Deputy Attorney General, and *George W. Woodruff,* Attorney General, for Commonwealth, intervening appellee.—Where a husband by his will gives to his wife all his estate, real and personal, for her natural life, the wife is entitled to all the personalty absolutely: Simpson's Est., 34 Pa. Superior Ct. 115; Drennan's App., 118 Pa. 176; Nat. L. Stock Bank v. Hartman, 8 Pa. Superior Ct. 170; Merkel's App., 109 Pa. 235; Hults v. Holzbach, 233 Pa. 367; Fidelity Trust Co. v. Bobloski, 228 Pa. 52.

A bequest of the interest of a fund, without limitation as to time, is a bequest of the fund itself, unless there is something to show a different intention: Boies' Est., 177 Pa. 190; Snyder v. Baer, 144 Pa. 278; Silknitter's App., 45 Pa. 365; Boyle v. Boyle, 152 Pa. 108.

A life tenant is what may be called a stakeholder of the fund, and is responsible to the remaindermen only for the fund which comes into her possession; that is, the fund so received, undiminished: Reiff's App., 124 Pa. 145; Letterle's Est., 248 Pa. 95; Weir's Est., 251 Pa. 499.

OPINION BY MR. JUSTICE KEPHART, November 23, 1925:

The will of Allen Kirkpatrick provided that the residue of his estate should go to his wife, "for and during the term of her natural life, or so long as she remains my widow, she to have full possession, control over and management of the principal of all my personal estate, and to manage and invest same in whatever manner she may deem proper and shall not be required to give any security therefor, to my hereinafter named executors." He died in 1890, his widow survived him and received from his estate $155,112.67. She died in 1924 naming, as beneficiaries, her children, the same persons who take the father's property at the mother's death. The widow's estate was appraised at $848,439.64. It is contended by appellant that part of these assets of the mother represented increased value of the father's property since his death and should be distributed as his estate, and not be the subject of an inheritance tax of $16,000. The question presented is whether this estate vesting in the children came from their mother or their father. The majority of the court below held that the widow took a life estate in the amount first stated and that only that much went to the children from their father; but that the balance of the second amount stated was the widow's own estate and that it went to the children from their mother.

The Act of May 17, 1871, P. L. 269, provides that, where personal property is given to one for life with remainder over, the life tenant may take possession thereof on giving security. We held in Reiff's App.,

124 Pa. 145, that one, under such circumstances, giving security under a similar act, became simply a debtor to the remaindermen for the appraised value, the latter's claim being payable out of the life tenant's estate or by his sureties. Letterle's Est., 248 Pa. 95, is to the same effect; the life tenant was a debtor not a trustee, and had to pay over to the remaindermen only the amount originally received. In Weir's Est., 251 Pa. 499, where the life tenant refused to give bond, the orphan's court, on her application, appointed a trustee to receive the property. We held the trustee stood in the same position as the life tenant, and the appraised value must be turned over without deduction. None of these cases were disturbed by Loewer's Est., 263 Pa. 517, 520. The essential difference is there pointed out by the present Chief Justice. In Weir's Est., the application for a trustee was on petition of the life tenant alone without recognition of any right or interest in the remaindermen. In Loewer's Estate, the petition was by the remaindermen and life tenant, all tacitly recognizing an interest in the former beyond the sum actually turned over to the trustee. They there treated the property as having been placed in trust for all purposes by the testator.

Where the testator directs that no security be given, the legal relations between life tenant and remaindermen must be the same as if a bond had been given under the Act of 1871. Prior to that act, section 49 of the Act of February 24, 1834, P. L. 70, 83, controlled; the wording is substantially the same as in the Act of 1871. Under the earlier statutes we held the life tenant was not a trustee within the Act of June 16, 1836, P. L. 784, (Mackinson v. Mackinson, 2 Grant 286), and under the Act of 1871, further bearing on the nonexistence of a trust estate, we held that no fiduciary relation existed to prevent the life tenant from becoming a purchaser of testator's property (Fidelity Ins., Trust & Safe Deposit Co. v. Dietz, 132 Pa. 36), also where the life

tenant has unlimited power of consumption his estate is not compelled to show what has been consumed: Welsh's Est., 239 Pa. 616. Here testator did not direct his residuary estate to be held in trust for the use and benefit of his wife for life or as long as she remained his widow, but gave her "full possession, control over and management of the principal of the personal estate and to manage and invest the same in whatever manner she deems proper."

Whatever may be the rule in other jurisdictions as to holding the life tenant to the obligations of quasi trustee, our Act of 1871 was enacted for the protection of the remaindermen as well as the life tenant by directing security to be given. The quantity of the estate was made certain and assured to those who were ultimately to receive it. But for the statute there would have been no necessity for testator to mention security. If a trust was implied, a bond would not change it (the Act of 1871 does not apply to an active trust, Watson's App., 125 Pa. 340), and, if a trust, no act required a bond. Testator evidently had the Act of 1871 in mind. In waiving security, as he had an undoubted right to do (he could have given all his estate to the widow), the estate was not taken out of the statute, but the words "should not be required to give any security therefor" took the place of the security by waiving it. The facts bring the case within the rule in Letterle's Estate. The hardships, if there be such, as to increment and profits in the life tenant's estate, were present in our prior adjudications.

When Allen Kirkpatrick's estate was distributed, a decree was entered on September 29, 1891, awarding the $155,112.67 to "Rebecca H. Kirkpatrick in trust for the purpose specified in will of deceased." This decree did not, however, fasten a trusteeship on the life tenant with respect to that property; to say "in trust" was purely a gratuitous and voluntary statement on the part of the judge who made the decree, for there was no

controversy on such a question, or on any other question, before the court at that time. It must be disregarded. The title here involved goes back to the original testator's will and is in no way dependent upon that decree.

Decree affirmed at cost of appellant.