## Gillett's Estate.

310

Argued November 18, 1937.

Be-fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-

FELD, PARKER, JAMES and RHODES, JJ.

*John P. Vallilee,* with him *William G. Schrier,* for appellants.

*J. C. Ingham,* with him *Stephen H. Smith,* for appellees.

OPINION BY KELLER, P. J., March 4, 1938:

Justin ,E. Gillett, late of the Borough of Athens, Bradford County, died on April 6, 1920, leaving a last will and testament dated April 12, 1913. Letters testamentary were granted to his wife, Lucy G. Gillett, the executrix named in the will, on April 29, 1920. The will contained the following bequest to his wife: "I give to my wife Lucy G. Gillett Four Thousand Dollars, twenty-six hundred dollars of which belongs to her in her own right and is invested with my funds." After certain legacies not necessary to be recited and a devise of his 'Peach Blow Cottage' to Mrs. Belle Phrang for life and remainder after her death to her children equally, he provided as follows: "I give and bequeath to my wife Lucy G. Gillett the use of the balance of my personal property and real estate during her nat-

312

ural life, and at her death I want it to be divided between the children of Nora Belle Phrang and the children of Charles A. Robinson."

On April 2, 1921 the executrix filed what she called "The first and partial account of the administration of Lucy G. Gillett, Executrix of the Estate of Justin E. Gillett, late of the Borough of Athens", etc. As a matter of fact it was a complete account of her administration of said estate. No exceptions were filed to the account and on May 16, 1921 it was confirmed absolutely.

By her account the executrix charged herself with the inventory filed, $23,586.93. This amount represents the inventory set forth in the printed record (pp. 119a-122a) as totalling $22,899.93, plus a land contract, $687, inserted in the inventory but erroneously not carried into the total. She took credit for administration expenses and inheritance taxes paid, $2,839.97, (including her commissions as executrix, $943.48) and legacies paid $8,069.15, (including the amount due her by her husband, $2,600, and $1,400 bequeathed her), making total payments of $10,909.12, and leaving a true balance of $12,677.81. But after stating the account in detail she presented the following:

"SUMMARY

"Legacies paid ........... $ 8069.15
Sundry items (page 1) paid     2839.97
                           _____
                           $10,909.12

"Personal property in hands of Lucy G. Gillett for life use as per last will and testament duly probated, to wit:
Sundry Land Contracts ... $10416.82
Sundry Bonds, etc. .......     1543.79
8 shares Amer. Tel. and Tel.     756.00
Household goods .........       252.40

Jenney note balance ......    13.33

Cash on hand ...........    $12982.34
                            10909.12  $23891.46

                                      23586.93

Amount due Excx. .............    $   304.53"

There is no difficulty whatever in understanding these figures. They show that in paying the expenses of administration, inheritance taxes, legacies, etc., the executrix, Mrs. Gillett, had advanced of her own funds $304.-53, or had not received her commissions in full, by that amount, and that the personal property held by her for her life use, as per her husband's last will and testament, representing property and securities in specie valued at $12,982.34, must be reduced by $304.53 due her, leaving the net worth of the estate in her hands for her life use, $12,677.81. If Mrs. Gillett, as life tenant, had given bond under the Fiduciaries Act of June 7, 1917, P. L. 447, section 23, p. 489, (superseding and repealing the 49th section of the Act of February 24, 1834, P. L. 70, and the Act of May 17, 1871, P. L. 269), to secure the interests of the persons entitled in remainder, its amount would have been based on the net amount retained by her as such life tenant, $12,677.81, not on the gross value of the securities before subtracting the money due her on the settlement of the account. An informality in an account will not be allowed to work injustice. So, too, if under the same section (23) of the Fiduciaries Act she had refused to enter such security and the court, on petition of a person interested, had appointed a trustee to receive and hold the property, the corpus of the trust fund to be delivered to such trustee would not have been the securities in the gross amount of $12,982.34, but the remainder after paying Mrs. Gillett the amount due her

as per the account as settled, to wit, $12,677.81. And this is not affected by the fact that Mrs. Gillett's bank account as executrix may have shown a cash balance sufficient to pay $304.53. She was entitled to $943.48 by way of commissions, $2,600 to repay the money due her by her husband, and $1,400, less tax, $26.60, for her pecuniary legacy, and it may well be that these sums were not all drawn out of the bank when the account was filed. The attorney who prepared the account testified—and he was not contradicted—that the money on hand of the estate was not sufficient to pay her commissions in full, and that the balance due her, $304.53, represented her unpaid commissions. The account was confirmed as filed and it shows a balance of $304.53 due her, while also showing securities and property unconverted in her hands of $12,982.34. The difference between them is the net estate for which she was obliged to account to those entitled in remainder.

Following the confirmation of her account, Mrs. Gillett did not enter approved security to protect the interests of those entitled in remainder as directed by section 23 of the Fiduciaries Act, supra; nor did she formally refuse to enter such security and take steps for the appointment of a trustee to receive and hold the property, as provided by said section. Nevertheless she took into her possession the property of the estate and handled, used and controlled the same as her individual property. She changed the securities by disposing of those which she took over from the estate, purchased new ones and in a general way handled, used and enjoyed the same as her own individual property and received and enjoyed the income and increment therefrom as her own property.

She died on August 4, 1934, having made a last will and testament of which she appointed Lura Donner the executrix, to whom letters testamentary were issued by the Register of Wills of Bradford County.

On June 3, 1935 a petition was filed by Eva A. Macafee and F. Scott Robinson, Administrators de bonis non, cum testamento annexo of Justin E. Gillett, deceased, in the Orphans' Court of Bradford County praying (a) that the said Lura Donner, Executrix of Lucy G. Gillett, deceased, be required to turn over to them the assets alleged to belong to the 'trust' estate of Justin E. Gillett, which were kept by said Lucy G. Gillett in a safe deposit box in her name in the Athens National Bank; (b) that a citation be issued to the said Lura Donner, to file an account on behalf of Lucy G. Gillett "of the latter's management of the said trust"; (c) that the court take possession of all the securities contained in said safe deposit box remaining after the removal of those referred to above and place the same where they cannot be removed or disturbed without the further order of the court or else require the said Lura Donner to give adequate security for the production of the same; and (d) that the said Lura Donner be required to produce the account book kept by Lucy G. Gillett relative to her dealings and transactions with said trust estate and that the same be retained in the custody of the court. On July 2, 1935 the petitioners prayed leave to amend their petition as follows: "That the said Lura Donner as Executrix of the last will of Lucy G. Gillett be decreed to be indebted to the Estate of Justin E. Gillett in the sum of Twelve Thousand Nine Hundred and Eighty-two Dollars and Thirty-four Cents ($12,982.34) with interest from the date of the death of said Lucy G. Gillett, the above mentioned sum being the amount of the property of the said Justin E. Gillett estate that the said Lucy G. Gillett as life tenant thereof took into her possession and retained until her death and which her estate still retains", and said amendment was allowed as prayed for.

A reading of the petition, with its prayers, and the amendment of July 2, 1935, will show that they are

inconsistent; the one seeking to have the Estate of Lucy G. Gillett declared a trustee of the funds coming into her possession from the Estate of Justin E. Gillett and the other asking that her estate be decreed to be indebted to the *Estate of Justin E. Gillett* in the amount received by her as life tenant. A like inconsistency appears in the positions taken by the respondent, this appellant, and in the rulings of the court below. It is not necessary to recite in detail the various steps taken, for we are of opinion that in its final consideration of the case the court below proceeded on the correct theory, and that the order so entered, with some modifications, to be referred to later, should be affirmed.

It is necessary to state, however, that Lura Donner, as executrix of the will of Lucy G. Gillett, pursuant to the order of the court, on July 29, 1935, filed an account entitled "Second Account of Lucy G. Gillett, as Executrix and trustee of personalty, and as trustee and life tenant of real estate under the will of Justin E. Gillett, deceased, as stated by Lura Donner, her personal representative." In this account she charged her decedent with nothing, by way of principal, that Mrs. Gillett had not included in the account filed by her— the amount realized from the sale of household goods, $3.50, was included in the appraisal value of the household goods, $252.40, with which she was charged; but she asked credit for various items of expense which would not be allowable if Mrs. Gillett was chargeable as a debtor with the net balance of the estate retained by her. Exceptions were filed to this account by the administrators d.b.n.c.t.a. of Justin E. Gillett and an auditor was appointed to audit the account, pass upon exceptions and report distribution. To his report exceptions were filed by both the accountant and the exceptants to the account. In the meantime, on September 28, 1935, pursuant to an order of court, the executrix of Lucy G. Gillett turned over to the adminis-

trators d.b.n.c.t.a. of Justin E. Gillett securities of the value, as later found by the auditor and approved by the court, of $11,040.22.

On February 12, 1937 the court filed its opinion and order on the exceptions to the auditor's report, sustaining certain exceptions and fixing the amount payable by the Estate of Lucy G. Gillett. We are in general accord with the decision of the court and the reasoning on which it is based, but are obliged to differ in some particulars. For the reasons stated at the outset of this opinion, the net balance of principal of the Estate of Justin E. Gillett which came into the hands of Lucy G. Gillett as life tenant was $12,677.81. The court erroneously increased this amount to $12,982.34. The final award against Lucy G. Gillett's estate is therefore too much by $304.53, and interest.

| | | |
|---|---|---|
| Using the correct figure .................. | | $12,677.81 |
| and, following the calculations of the lower court, allowing credit for clerk's fees ......... | $9.50 | |
| Schrier & Vallilee for legal services in preparing the account .. | 100.00 | |
| and household goods distributed to the remaindermen .......... | 248.90 | 358.40 |
| Leaves a balance of ..................... | | $12,319.41 |
| for which the estate of Lucy G. Gillett is accountable, as of the date of her death, August 3, 1934. | | |
| Adding interest on this amount from August 3, 1934, the date of Lucy G. Gillett's death, to September 28, 1935, when the securities were turned over to the administrators d.b.n.c.t.a. ........ | | 852.09 |
| we have a total of ..................... | | $13,171.50 |

Applying on this amount
credit for the value of the se-
curities turned over to the
administrators ·d. b. n. c. t. a.
(as found by the auditor and
approved by the court) ........ 11,040.22
plus the interest which ac-
crued, as found by the audi-
tor ......................... 472.44   11,512.66

leaves a balance unpaid on
September 28, 1935 of ................. $1,658.84
and interest to February 13,
1937 ................................. 136.86

or a total as of the date of
the court's order of .................... $1,795.70
instead of $2,150.23 as fixed
in the order.

The court in its final opinion stated the legal prin-
ciples which ruled the case very clearly, as follows:
"Lucy G. Gillett held the property in her possession by
virtue of the will, and the will provided that she should
hold it for her life use, and in the account she filed, she
took credit for the property which she turned over to
herself to so hold as a life tenant according to the provi-
sions of the will, and we believe her status was thereby
fixed. The will did not make her a trustee, nor direct
that she should hold the property as a trustee, but it
gave it to her individually to use [during] her lifetime,
and we are of opinion that neither she, nor those claim-
ing under her, can change, or alter her relationship to
the fund, which she took over. It is conceded that had
Lucy G. Gillett entered the security provided by law
for a life tenant to enter when taking over property
to the end that the remaindermen may be secured, there
could be no contention but that she took the property

as her own and became responsible for its value, but it
is alleged that because she neglected to perform that
duty, she thereby placed herself in a position more
favorable and advantageous to herself than [if she had]
done her duty and entered the security. We are not
convinced of the soundness of this contention. The
fact [that] she omitted a duty, cannot relieve her from
the responsibility she owed to the remaindermen on ac-
count of the property which she took over as life tenant.
Had the security been entered, it would have been solely
for the protection of the remaindermen, and certainly
they cannot be denied the protection they have without
it, simply because she failed to enter the security. 'The
waiving of giving of security may be made by a tes-
tator,' *Kirkpatrick's Estate*, 284 Pa. 583. Likewise the
remaindermen may waive the giving of security. *Chal-
fant's Estate*, 294 Pa. 331. 'Where a promisor in a con-
tract is himself the cause of the failure of performance
either of an obligation due him or of a condition upon
which his own liability depends, he cannot take ad-
vantage of such failure to escape liability.' *Nanty-Glo
Boro v. Surety Co.*, 316 Pa. 408, [syl.1]. Judge Gest
in *Strawbridge's Estate*, 14 D. & C. 703, held that the
failure to enter the bond by a life tenant does not affect
the rights of the life tenant or the remaindermen.
When Lucy G. Gillett took over the property which
she did take over as a life tenant, the property became
to all intents and purposes her own, and she became a
debtor to the remaindermen, to the value of the prop-
erty so taken. Where a life tenant takes over personal
property to use the same during her lifetime pursuant
to a will, the result is : 'In effect to make the sum thus
received by testatrix a part of her individual estate.
It could be invested by her in the purchase of real
estate, embarked in mercantile adventures, or stock
speculations, or expended in her living and family ex-
penses as she deemed advisable. The money became

essentially her own; and she was simply a debtor, to the parties ultimately entitled at her death, whose claim is now payable out of her estate, and, in the event of its insolvency, by her sureties upon the bond given by her as legatee for life. The remaindermen are now creditors of the estate of the testatrix, and are entitled to interest from the date of her death ...... it follows, therefore, testatrix cannot be allowed compensation for the care of the so-called trust fund; nor can it be diminished by deducting any portion of the expenses of the settling of the estate.' *Reiff's Appeal,* 124 Pa. 145, 149; *Kirkpatrick's Estate,* 284 Pa. 583; *Letterle's Estate,* 248 Pa. 95; *Weir's Estate,* 251 Pa. 499; *Strawbridge's Estate,* 14 D. & C. 703; *Pollock's Estate,* 306 Pa. 301. [See also, *Estate of Hattie Linn Swaney,* 94 Pa. Superior Ct. 216, 228.] Therefore, in our opinion, the estate of Lucy G. Gillett, at the date of her death, was indebted to the remaindermen in the sum of Twelve Thousand Nine Hundred Eighty Two Dollars Thirty Four Cents ($12,982.34). [should be, $12,677.81] being the [net] amount and value of the property which she took possession of, held, used and enjoyed as life tenant, and that her estate must account for this amount, without deductions of any kind by way of expenses in handling the same."

With this statement of the law we are in full accord. But notwithstanding the fact that the court had stated, not once but several times, that by Mrs. Gillett's taking over the property for her life use it became to all intents and purposes her own and that she became a *debtor to the remaindermen* to the value of the property so taken,—that "the *remaindermen are now creditors of the testatrix* [that is, the life tenant] and are entitled to interest from the date of her death"—, the decree entered was "that the estate of Lucy G. Gillett, deceased, is, as of this date, February 13, 1937, indebted to the *Estate of Justin E. Gillett, deceased,* in

the sum of $2150.23" [reduced by us to $1,795.70]. None of the decisions, cited and relied on by the court below, support the order in this form. Her estate is indebted to the remaindermen, for whose protection, solely, security would have been entered if she had given the bond contemplated by the Act of 1917. The difficulty results from the erroneous position originally assumed by the administrators d.b.n.c.t.a. of Justin E. Gillett, who contended that Mrs. Gillett was a trustee of the funds received by her as life tenant and must account to them as succeeding representatives of her husband's estate for her administration of the trust; which contention was upheld and followed by the court in its order to the appellant, as Executrix of Lucy G. Gillett, to turn over to appellees, as administrators d.b.n.c.t.a. of Justin E. Gillett, securities found in the safe deposit box of Lucy G. Gillett of the value, as later found by the auditor and approved by the court, of $11,040.22. Strictly speaking, the administrators d.b.n.c.t.a. of Justin E. Gillett—if there was any cause whatever for the issue of such letters—were not the proper persons to take proceedings looking to the protection of the interests of those entitled in remainder. The remaindermen could do that themselves, and the orderly course would have been for them—that is, the remaindermen, who were creditors of Lucy G. Gillett—to present their claim for the net value of the property taken over by Mrs. Gillett for her life use, with interest from the date of her death, against the Estate of *Lucy G. Gillett,* and not by proceedings in the Estate of *Justin E. Gillett* to establish a trust fund due by the former to the latter estate. The course we have outlined as proper was that taken in *Reiff's Appeal,* supra, on which the court below relied. It does not appear that any of the property taken over by Lucy G. Gillett, except the household goods, which were turned over to the *remaindermen,* and eight shares of American Telephone & Telegraph

Company stock, remained unconverted at Mrs. Gillett's death and thus passed in specie to the remaindermen: *Chalfant's Est.*, 294 Pa. 331, 333, 144 A. 134; *Loewer's Est.*, 263 Pa. 517, 106 A. 789. It should be added that in the litigation resulting from the initial wrong step the appellant herself was not blameless and likewise took positions not legally sustainable.

However, the matter has been thoroughly litigated and has, finally, been decided on correct legal principles. We are not disposed, by a strict application of those principles, to upset the proceedings and render all that has been done hitherto nugatory, if this can be avoided without injustice to the appellant and those entitled in remainder. But the appellant should not be exposed to the threat or possibility of a double payment by reason of a claim by the remaindermen against her testatrix's estate. The securities previously delivered the appellees as administrators d.b.n.c.t.a. of Justin E. Gillett as per order of court must be considered as delivered to them as agents for the remaindermen. They have no other right to them. And the amount ordered to be paid by the decree appealed from, as modified in this opinion, must likewise be considered as a payment to and on behalf of the remaindermen. Otherwise an injustice may be done the appellant.

We shall accordingly enter a conditional judgment and affirm the decree of the court below, as modified in this opinion, on the condition that upon payment by the appellant to the appellees of the amount fixed in the decree as modified, the appellees deliver to the appellant a release in full executed by all of the remaindermen entitled to the property of Justin E. Gillett taken over by Lucy G. Gillett for her life use, to wit, the children of Nora Belle Phrang and the children of Charles A. Robinson, discharging the appellant and the Estate of Lucy G. Gillett, deceased, from all claim and liability whatsoever, arising out of the retention by the

said Lucy G. Gillett of the assets of the Estate of Justin E. Gillett. Said release to be tendered within one month following the return of the record to the court below, unless the time is further extended by this court. In default thereof, on notice to this court, the above conditional judgment will be revoked and an alternative judgment entered. Each party to pay one-half of the costs on appeal.

It is so ordered.